IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**MICKI C. SANDERS**                                                                      **PLAINTIFF**

V.                          **CASE NO. 3:21-CV-00011 DPM-JTK**

**KILOLO KIJAKAZI, ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINSTRATION**[1]                              **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.   Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Chief District Judge D. P. Marshall, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.   Introduction:**

The Commissioner submitted, in error, a prior administrative transcript at the beginning of Doc. No. 9. For this reason, there are duplicative page numbers contained in the administrative transcript within Doc. No. 9. The latter half of Doc. No. 9 is the relevant portion of the transcript for this Court's review. For clarity, the Court will cite to the transcript in this way, for example: (Tr. at 15, ***Doc. No. 9-12***). That distinguishes that particular cite from (Tr. at 15, ***Doc. No. 9-2***).

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

Plaintiff, Micki C. Sanders, applied for disability benefits on March 2, 2019, alleging disability beginning on June 30, 2018. (Tr. at 15, Doc. No. 9-12). The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Sanders's claim on August 14, 2020. (Tr. at 28, Doc. No. 9-12). The Appeals Council denied her request for review on November 25, 2020. (Tr. at 1, Doc. No. 9-12). The ALJ's decision now stands as the final decision of the Commissioner, and Sanders has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

**III.    The Commissioner's Decision:**

The ALJ found that Sanders had not engaged in substantial gainful activity since the alleged onset date of June 30, 2018.[2] (Tr. at 18, Doc. No. 9-12). The ALJ found, at Step Two, that Sanders had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease in multiple joints, fibromyalgia, chronic pain syndrome, diabetes mellitus, obesity, gastroparesis, gastritis, colitis, depression, and anxiety. *Id*.

At Step Three, the ALJ determined that Sanders's impairments did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Sanders had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with additional limitations. (Tr. at 20, Doc. No. 9-12). She can only occasionally reach overhead to the left and to the right. *Id*. She is limited to no more than frequent handling or fingering with the bilateral hands. *Id*. She can no more than occasionally balance, stoop, kneel, crouch, crawl, and

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

climb ramps/stairs. *Id*. She can never climb ladders, ropes, or scaffolds. *Id*. She must avoid concentrated exposure to excessive vibrations. *Id*. She requires work that is indoors and has access to a restroom, as well as work that may be performed while using an adult diaper or incontinence protection pad. *Id*. She can make simple work-related decisions and maintain concentration, persistence, and pace for simple tasks. *Id*. She can carry out and remember simple work instructions and procedures, and can adapt to change in the work setting that are simple and predictable and that can be easily explained. *Id*. She is limited to no more than occasional and superficial interaction with coworkers, supervisors, and the public. *Id*.

The ALJ found that Sanders is unable to perform any past relevant work. (Tr. at 26, Doc. No. 9-12). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that that, based on Sanders's age, education, work experience, and RFC, there were jobs in the national economy that she could perform (Tr. at 27, Doc. No. 9-12). Therefore, the ALJ found that Sanders was not disabled. *Id*.

**IV.   Discussion:**

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into

account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Sanders's Arguments on Appeal

Sanders argues that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Her sole argument is that the ALJ erred by not discussing the written statements of Sanders's mother, Mary Estes.

Sanders complained of pain throughout her body. MRIs taken of the lumbar and cervical spine showed moderate-to-severe degenerative disc disease. (Tr. at 829, Doc. No. 9-19, Tr. at 882-891, 902, Doc. No. 9-20). A cervical discectomy was performed in November 2018, (Tr. at 889-897, Doc. No. 9-20). After the surgery, Sanders said she was doing well and had reduced her pain medications. (Tr. at 594, Doc. No. 9-18). Improvement in condition supports an ALJ's finding that

a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). Sanders experienced some relief from steroid injections and branch blocks. (Tr. at 770, Doc. No. 9-19; Tr. at 1099-1118, Doc. No. 9-23). At the hearing, which took place on June 8, 2020, Sanders said that while she had neck pain, she had not sought treatment for that pain since her 2018 surgery. (Tr. at 46, Doc. No. 9-12). The failure to seek regular and continuing treatment contradicts allegations of disability. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

Sanders said that fibromyalgia was under control with medications, and doctors did not recommend more than conservative treatment for that condition. (Tr. at 44, Doc. No. 9-12). Sanders also failed to follow up with a rheumatologist as recommended. (Tr. at 26, Doc. No. 9-12). Moreover, she said that Metformin controlled her diabetes. (Tr. at 52, Doc. No. 9-12). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). As for gastrointestinal problems, Sanders said that Questran seemed to control symptoms. (Tr. at 447-449, Doc. No 9-17). She did not require aggressive treatment. In any event, the ALJ accounted for gastrointestinal conditions in the RFC, allowing ready access to a restroom and the ability to wear an adult diaper on the job.

Sanders alleged problems stemming from anxiety and depression, but she admitted that she had not attended therapy since August 2019. (Tr. at 47, Doc. No. 9-12). Moreover, while she complained of poor sleep, her doctor recommended better sleep hygiene, weight loss, and exercise to mitigate her medical problems. (Tr. at 1122, 1266, Doc. No. 9-23). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Sanders admitted at the hearing that she did not exercise. (Tr. at 52, Doc. No. 9-12).

5

Sanders could perform some daily activities: she could drive, do light chores (albeit with breaks), spend time with others, do some shopping, and play games on her IPad. (Tr. at 50-52, Doc. No. 9-12; Tr. at 235-259, Doc. No. 9-16). Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Sanders asserts that the ALJ erred by not discussing two statements from Sanders's mother, Mary Estes. On January 24, 2018, before the beginning of the relevant time-period, Ms. Estes wrote a letter stating that Sanders would struggle to hold a job due to her conditions. (Tr. at 429. Doc. No. 9-6). Later, Ms. Estes submitted an exact duplicate of that letter but changed the date to April 29, 2020. (Tr. at 318, Doc. No. 9-16). Also, in the letter, Ms. Estes explained the financial difficulty she and her daughter experienced and how "financial help through disability would be a great help." *Id*. That statement certainly colors why Ms. Estes wrote the letter. *See Robinson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (ALJ properly discounted witness statement because, among other things, witness was an interested party with a financial stake in the outcome of the matter.)

When evidence is duplicative of other evidence, the ALJ is under no obligation to discuss it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (Court held that requiring a "duplicative and exacting discussion of every piece of evidence" would unnecessarily delay the determination process for Social Security benefits). Ms. Estes's statements were not only duplicative because they were exactly the same letter dated two years apart, but they simply reiterated Sanders's own testimony and offered nothing that differed greatly from what the medical records presented. And the ALJ thoroughly discussed the evidence that ran parallel to Ms. Estes's statements. Furthermore, the ALJ did account for just such things mentioned by Ms. Estes when he assigned

6

a rather restrictive RFC. The ALJ's decision was based upon a fulsome review of the record as a whole.

## V.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err by failing to address Ms. Estes's statements. The finding that Sanders was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 7th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE